## J. A. BONNET, JR., v. FIRST NATIONAL BANK OF EAGLE PASS.

### Decided December 12, 1900.

**1. Banking Corporation—Increase of Stock—Rights of Shareholders.**

Where a banking corporation has increased its capital stock, a stockholder can not recover damages of it for its action in refusing him the right to acquire his quota of the increased shares, proportionate to the amount already owned by him, unless he has demanded the shares and offered to subscribe and pay for them within a reasonable or fixed time.

**2. Same—Consolidation—Ultra Vires.**

Since the National Bank Act recognizes the right of a national bank to wind up its business and consolidate with another such association, a consolidation of two national banks under the direction and sanction of the Comptroller of the Currency is not void as being ultra vires.

**3. Same—Stockholder's Right on Consolidation.**

Where there has been a consolidation of two national banks, the value of the shares of each being equal, a stockholder in the absorbing bank is not entitled to claim any of the increased stock issued for the purchase of the assets of the other bank and delivered to its shareholders in lieu of their original stock.

**4. Same—Measure of Damages.**

Where there has been an increase in the capital stock of a corporation in which a stockholder has the right to share, the measure of damages for a denial of such right is the excess of the market value of the stock above its par value at the time of issuance, with interest on such excess.

APPEAL from Maverick. Tried below before Hon. J. S. MORIN, Special Judge.

*Sanford & Douglass*, for appellant.

*Winchester Kelso*, for appellee.

NEILL, ASSOCIATE JUSTICE.—J. A. Bonnet, Jr., a minor, by his father as next friend and natural guardian, brought this suit against the appellee for damages in the sum of $840 for its failure and refusal to issue him twelve shares of its alleged increased stock, which he claimed he was entitled to by reason of his being a stockholder in the corporation prior to and when its capital stock was increased.

The appellee, defendant below, answered by a general denial, and specially plead in substance that its stock was not increased to the amount alleged by the appellant. That its capital stock, of which appellant owned nine shares of $100 each, was originally $60,000. That for the purpose of consolidating with the Simpson National Bank, whose capital stock was $70,000, appellee, by a resolution duly passed by its stockholders, increased its capital stock $10,000, so as to make its stock equal in amount to that of the bank it contemplated consolidating with. That afterwards, in effecting such consolidation, it by a vote of its stockholders at a meeting which appellant was duly notified to attend, increased its stock $70,000, making the total amount of its capital stock at the time of such consolidation $140,000, and that the shares of stock to an amount of $70,000 were issued to the old stockholders of the Simpson National Bank, in lieu of the stock they held therein, and in payment of the assets received at the time by appellee from the Simpson National Bank, which assets, over and above the liabilities of said bank assumed by appellee in the consolidation, exceeded the value of the $70,000 of shares issued to the old stockholders of the Simpson National Bank. That appellant was only entitled as a stockholder to his pro rata share of the $10,000 of stock issued to bring appellee's stock up to the amount of that of the other bank, which would entitle him to only one and one-half shares, the value of which it tendered to appellant.

Appellant, plaintiff below, by a supplemental petition specially excepted to appellee's answer. The exceptions being overruled, the case was tried before a jury, and resulted in a verdict and judgment in favor of appellant for $112.50, the difference between the par value of one and one-half shares and the market value, with interest,—from which judgment he has appealed to this court.

The matters averred in appellee's answer were substantially proven upon the trial. Prior to the 6th day of March, 1899, the two national banks mentioned in the pleadings of the parties were doing business in the city of Eagle Pass, Texas. At that date the capital stock of the First National having been increased $10,000, the shares of stock held

by its respective stockholders of each bank were for $70,000, the shares being for $100 each. The market value of the shares of each bank was at that time equal, it being about $150 per share. At that time the two banks were, with the approval and sanction of the comptroller of the currency, consolidated. The Simpson National Bank having gone into liquidation, turned over all of its assets to the First National Bank, who assumed all the former's liabilities. The shares of stock held by the Simpson National Bank were canceled, and in lieu thereof the same number of shares were issued to the respective stockholders by the First National Bank, and when issued, were of the market value of $150 per share, it being the same value of the shares held by the original stockholders of the First National.

The negotiations for the consolidation of the banks were conducted for two or three months prior to its consummation, the appellant, J. A. Bonnet, Jr., having been duly notified to attend the meeting of the stockholders of the First National Bank, and of the purpose of the meeting, at which all of the stockholders, except him, voted for the consolidation. He, though living in Eagle Pass, failed to attend the meeting, or object to the consolidation; nor did any one with authority to represent him make objection to it. He received in proportion to his shares as much value from the assets of the Simpson National Bank taken in the consolidation as any other stockholder of the First National. He is the only stockholder who demanded any of the increased stock that went to purchase the assets of the Simpson National Bank, and received by its stockholders in lieu of their original stock. And it was not until about thirty days after the consolidation that he made the demand.

The propositions asserted by appellant under various assignments are: That as an original stockholder in the First National Bank he was, unless he waived his right thereto, entitled to his pro rata of the $70,000 increase of its capital stock; and that this right was not affected by the purpose for which the increase of stock was made, because the consolidation was ultra vires and void.

The general rule is, "that when the capital stock of a corporation is increased by the issue of new shares, each holder of the original stock has a right to offer to subscribe for and to demand from the corporation such a proportion of the new stock as the number of shares already owned by him bears to the whole number of shares before the increase." Cook on Corp., 4 ed., sec. 286. And this rule was in effect substantially embodied in the by-laws of the First National Bank. It has been held, however, that where the statute provides for the issue of stock in payment for property increased, capital stock may be so issued without the same being first offered to existing stockholders. Meredith v. Iron Co., 37 Atl. Rep., 539. The general rule applies only when the capital is actually increased, and not to a reissue of any portion of the original stock. This right of the holder of original stock must be exercised within a fixed or reasonable time; and if the shareholder fails to avail

himself of it, he is barred by laches or acquiescence of his right to contest the disposition of the stock of some one else. Terry v. Lock Co., 47 Conn., 141; Hart v. Railway, 30 La. Ann., 758. An attempt to deprive the stockholder of this right will be enjoined in the absence of laches or acquiescence. Dousman v. Smelting Co., 40 Wis., 418. Therefore the stockholder who brings his action against the corporation for damages for refusal to allow him to subscribe for the new shares, or for selling the shares to some one else, or of depriving him in any other way of them, must allege and prove that he demanded his shares and offered to subscribe and pay for them in the regular way within the time fixed for such subscriptions. And the measure of damages is the excess of the market value above the par value at the time of the issue of the shares with legal interest on such excess.

If it should be conceded there was such an increase by the bank of its capital stock as entitled its shareholders to a pro rata thereof, yet it would seem from the authorities cited that appellant, not having offered to subscribe for a pro rata share of the increase within a reasonable time, would be barred from afterwards asserting such right. We do not wish, however, to be understood as deciding this case upon such concession.

In our opinion the crucial questions to be determined in this case are, was the consolidation (for it is treated by appellant as a consolidation) or amalgamation of the banks ultra vires, and therefore void? And if void, does it, under the facts, follow that appellant is entitled to the damages claimed in this action?

As a general principle, corporations can not consolidate unless the authority is conferred by legislation. Such authority may be given in the act by virtue of which the corporation was organized, whether it be a special act of incorporation or a general act under which all corporations of the same kind are chartered. The banks, the consolidation of which we are considering, were of course organized and received their charters under authority of the national bank act. Section 5223, of United States Revised Statutes (a part of that act) clearly recognizes the right of a bank incorporated thereunder to wind up its business and consolidate with another such association, and may be regarded as legislative authority for the consolidation of the banks in question, provided it was otherwise legally effected. The right thus given to national banks to consolidate can not be regarded as an amendment to their charters, but is rather to be considered as read into and forming a part of the charter of every national bank. It is of course well understood that a material and fundamental change by an amendment of the charter of a corporation is a violation of the contract rights of any stockholder who does not assent to such an amendment, and an amendment of a charter consolidating the corporation with another corporation is such a material and fundamental change. Cook on Corp., 4 ed., sec. 5001.

It is seen from the facts of this case that the consolidation of these

banks was effected under the direction and by the sanction of the comptroller of the currency. And this appears independent of his letters, the introduction of which in evidence is complained of by the appellant. It will be presumed, therefore, that the consolidation was legally effected.

It is generally held that the effect of a consolidation is the dissolution of the corporations previously existing, and at the same instant the creation of a new corporation, with property, liabilities, and stockholders derived from those passing out of existence. It is in effect the surrender of the old charter of the companies, the acceptance thereof by the Legislature, and the formation of a new company out of such of the old as entered into the new. Cook on Corp., 4 ed., sec. 897; Adams v. Railway, 24 So. Rep., 201. And it has been held that a consolidation, and not a mere sale and purchase, is effected where all the property and franchises of one corporation are transferred to another, and where the stockholders of the former corporation transfer all their shares therein to the latter company, under an arrangement by which the shares of the latter company are issued to them in exchange Railway v. Ashling, 160 Ill., 373, 43 N. E. Rep., 373.

Therefore it may be considered that the instant the consolidation of these two corporations was effected, the First National Bank of Eagle Pass, though its name remained unchanged, became in effect a new corporation, having as its stockholders not only its former ones, but those of the Simpson National Bank, which had been amalgamated with it, with the franchises, property, and liabilities held and incurred by each before the act of consolidation.

To say when the First National Bank assumed this attitude that each of its original stockholders was entitled to demand such a proportion of the increased stock as the number of shares he owned bore to the whole number of shares before the increase, would be to deprive the old shareholders of the Simpson National Bank not only of the value of their stock, but to take from them all the assets of the old bank. What could be more manifestly unjust? Yet if appellant has this right, all the other old stockholders of the bank had the same right.

We are firmly of the opinion that the act of consolidation was regular and not void as ultra vires. But if it were void, it by no means follows that the appellant would have the right he claims in this action. Its invalidity should have been or should be attacked in some other way. He is in no attitude to claim that part of the means by which the consolidation was effected, that is, the increase of the capital stock, was valid, and that all other acts by which it was effected are void; thus taking advantage of that which was valid, and avoiding that which he says was not. The consolidation, as well as the means by which it was effected, if void, was void in toto, the increased stock as well as everything else connected with it, and no right in that event could be claimed by appellant to an increase of shares wholly void. He can not in the

same breath blow hot and cold, but must treat the transaction either as valid or void. If valid, the alleged increase of stock was properly issued to the old stockholders of the Simpson National Bank. If invalid, the increase was likewise void, of no value, not fit to predicate an action for damages upon on account of the failure of the company to issue it to him.

Appellant having failed to accept the one and one-half shares which, as an old stockholder, he was entitled to receive as his pro rata of the increase of ten shares, and having brought suit for damages, the measure of which is the excess of the market value above the par value at the time of the issue, can not now be heard to complain of the refusal to give the special charge which he asked instructing the jury to find for him the one and one-half shares of such increased stock. By the judgment appealed from he has obtained all, if not more, than he is either in law or equity entitled to. The judgment is therefore affirmed.

*Affirmed.*