## APPEAL OF R. D. MUSSER.

Docket No. 3046.   Submitted June 22, 1925.   Decided October 27, 1925.

> The taxpayer owned certain shares of stock in a national bank, which, in 1919, was consolidated under a modification of its own charter with two other national banks and its name changed. Upon consolidation the taxpayer received 1⅛ shares of stock in the consolidated bank for each share of stock owned previously. *Held*, that the taxpayer exchanged certificates of stock in one national bank for a larger number of shares of stock in a consolidated national bank and that the taxpayer is liable to income tax in respect of the difference between the market value of the shares of stock received in exchange and the cost or March 1, 1913, value of the shares of stock originally held.

*George T. Weitzel* and *Rhodes E. Cave, Esqs.*, for the taxpayer.
*Edward C. Lake, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax for the year 1919 of $2,181.43. All the material facts were stipulated in writing by counsel on both sides, and from such stipulation and the allegations of the petition admitted by the Commissioner, the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a resident of Little Falls, Minn. In 1919 he was the owner of 171 shares of capital stock of the Third National Bank of St. Louis, 104 shares of which were acquired prior to March 1, 1913, at a cost not shown by the record, and upon which the Commissioner has placed a valuation at March 1, 1913, of $26,624, which is equivalent to $256 per share, the remaining 67 shares having been acquired in 1914 at a cost of $250 per share, or $16,750.

During the year 1919, the Third National Bank of St. Louis (hereinafter referred to as Third National Bank), the Mechanics-American National Bank of St. Louis, and the St. Louis Union National Bank, all located in the City of St. Louis, Mo., entered into an agreement of consolidation in terms and figures as follows, to wit:

> This agreement, made between The Third National Bank of St. Louis and The Mechanics-American National Bank of St. Louis and The St. Louis Union National Bank, all located in the City of St. Louis, State of Missouri, and each acting pursuant to a resolution of its Board of Directors and by a majority of said Boards, pursuant to the authority given by, and in accordance with the provisions of, an Act of the Congress of the United States entitled "An Act to provide for the consolidation of national banking associations," approved on the 7th day of November, 1918, witnesseth as follows:
>
> 1. The Third National Bank of St. Louis (hereafter referred to as the Third National Bank), The Mechanics-American National Bank of St. Louis (here-

after referred to as the Mechanics Bank) and The St. Louis Union National Bank (hereafter referred to as the St. Louis Union Bank) are hereby consolidated under the charter of the said first named association as hereby modified.

2. The name of the consolidated association shall be "First National Bank in St. Louis."

3. The amount of capital stock of the consolidated association shall be Ten Million Dollars ($10,000,000.00) divided into one hundred thousand (100,000) shares of One Hundred Dollars ($100.00) each, subject to the right to change the amount of said capital hereafter as is now, or shall hereafter be, authorized by law. On the date of consolidation its surplus shall be Five Million Dollars ($5,000,000.00) and its undivided profits shall be Five Hundred Thousand Dollars ($500,000.00). Said capital, surplus and undivided profits at the date of consolidation shall then aggregate Fifteen Million Five Hundred Thousand Dollars ($15,500,000.00). Of this capital stock thirty-three thousand three hundred thirty-three and one-third (33,333⅓) shares shall be allotted to the then shareholders of each of said banks, being one and one-third (1⅓) shares for each share now held by them.

To create such capital, surplus and undivided profits and the special fund of Two Hundred Fifty Thousand Dollars ($250,000.00) for the stockholders of the Third National Bank hereinafter provided for in Paragraph 7 hereof, each of the three banks shall furnish net assets, over and above all of its liabilities of. Five Million Two Hundred and Fifty Thousand Dollars ($5,250,000.00) and additional assets in an amount sufficient to cover all state and city taxes assessed against it up to and including May 31, 1919, and all assessed and estimated federal taxes up to said date.

If the amount contributed by any of the three banks to provide for estimated federal taxes up to said date be not sufficient to pay said taxes when finally assessed and determined, any additional amount required for that purpose shall be paid by the consolidated bank, in which event an equal amount shall be paid by the consolidated bank on account of the taxes of the other two banks. If the amount so contributed by any of the three banks is in excess of the amount of said taxes as finally assessed and determined, then such excess amount shall be added to and held by the consolidated bank as a part of the trust fund provided for in Paragraph 6 hereof.

4. The assets contributed by each of the banks shall, upon the effective date of the consolidation, be passed upon and be acceptable to a committee of nine (9), three (3) to be appointed by the Board of Directors of each of the banks, which committee shall examine the assets of each of the banks and select therefrom sufficient assets in excess of the total liabilities of said banks to other than stockholders to make up said sum of Five Million Two Hundred and Fifty Thousand Dollars ($5,250,000.00) and taxes as hereinbefore provided and certify to such valuation. And the assets so selected by said committee shall constitute the assets to be contributed by each of the three banks to the consolidated bank.

Said committee shall accept and treat all real estate owned by said banks as of its present book value and shall accept and treat the furniture and fixtures of the Mechanics Bank as of a value of One Hundred Thousand Dollars ($100,000.00) and shall determine the value of all other assets selected and accepted by it.

5. In the event said committee does not accept assets of any of said banks up to the required amount, then the shareholders of such bank not having sufficient assets to make good its proportion shall pay the difference in cash.

6. In the event that the committee finds assets belonging to any of the three consolidating banks in excess of the said amount to be contributed by each

of them, then such excess assets, if any, shall be by such bank transferred and delivered to the consolidated bank, to be held by said bank in a special trust account for liquidation and distribution among the stockholders, as of the date of consolidation, of the respective banks contributing the same. The directors of the consolidated bank shall have full and absolute discretion in the liquidation and distribution of the same, and neither they nor the bank shall be in anywise liable for any act of theirs in relation thereto, except for their wilful misconduct. Such excess assets may be held for a period of six (6) months after the consolidation by the consolidated bank as a guarantee against any undisclosed liabilities of the contributing banks, and if any such liabilities are asserted within six (6) months after the consolidation, said excess assets, or such part thereof as the directors of the consolidated bank shall deem advisable, shall be held by the consolidated bank until such liabilities are discharged, and said assets may be used in the absolute discretion of the directors of the consolidated bank to liquidate and discharge any such liabilities.

7. Out of the assets aggregating Fifteen Million Seven Hundred and Fifty Thousand Dollars ($15,750,000.00) and taxes as aforesaid, contributed by the three banks, Fifteen Million Five Hundred Thousand Dollars ($15,500,000.00) shall constitute the capital, surplus and undivided profits of the consolidated bank, and the remaining Two Hundred and Fifty Thousand Dollars ($250,000.00) which amount represents the agreed excess value of the business of the Third National Bank over the business of each of the other banks, shall be set aside and held by the consolidated bank as a special fund for the account of the stockholders of record of the Third National Bank on the date of the consolidation and as a guarantee against loss on the real estate of the Third National Bank upon the following conditions, to wit:

If the real estate now owned by the Third National Bank is occupied as the permanent place of business of the consolidated bank, under resolution of its Board of Directors, then, when so occupied, said sum shall be distributed among the persons, or their legal representatives, who were stockholders of the Third National Bank on the date of the consolidation.

If said real estate be sold prior to July 1, 1922, at its present book value, then said sum shall likewise be so distributed when said real estate is sold. If said real estate is sold prior to said date for less than its present book value, then the difference between the sale price and said book value shall be deducted from said sum and shall become the property of the consolidated bank, and the remainder only, if any, of said sum shall be so distributed to said stockholders.

If said real estate is not so occupied by the consolidated bank and is not sold prior to July 1st, 1922, then said sum shall become the property of the consolidated bank.

8. The Board of Directors of the consolidated bank shall be not less than five (5) nor more than fifty-five (55) in number.

These directors shall continue in office until new directors are elected and qualify. The stockholders shall, at each annual meeting, have the right to determine the number of directors to be elected for the ensuing year, and, in the absence of any change, the same number of directors shall be elected as were elected the preceding year.

9. The above mentioned Board of Directors shall meet at the office of the above-mentioned consolidated bank on July 7, 1919, at the hour of ten o'clock A. M., for the purpose of electing officers of the consolidated bank, adopting by-laws and transacting such other business as may come before said meeting.

These officers shall serve until their successors shall have been chosen and qualified.

If such consolidation has not become effective on July 7, 1919, then such first meeting of the Board of Directors shall be held at the hour of ten o'clock A. M. on the effective date of such consolidation.

10. On July 5, 1919, or on the date the consolidation takes effect, each of the stockholders of the three banks shall, on delivery of his certificates of stock in the consolidating banks, duly endorsed for cancellation, receive, on demand, on or after the day succeeding the effective date of consolidation, one and one-third (1⅓) shares of stock in the consolidated bank for each share of the stock formerly owned by him in the respective consolidating banks.

11. The consolidation herein provided for shall become effective as of the close of business on July 5, 1919, if the consolidation shall then have been ratified and confirmed by the affirmative vote of the shareholders of each of the said three banks holding at least two-thirds (⅔) of their capital stock outstanding, at meetings to be called and held as provided in the National Banking Act, and shall have been approved by the Comptroller of the Currency of the United States. And if not so ratified and approved on or before said July 5, 1919, then the consolidation shall become effective when so ratified and approved.

Witness the signatures and seals of said associations, this ――― day of ―――, 1919, each hereunto set by the President and attested by its Cashier, pursuant to a resolution of its Board of Directors, acting by a majority thereof, and witness the signatures hereto of a majority of each of said Board of Directors.

At the time of the execution of the agreement above quoted the capital stock of the Third National Bank was $2,000,000, the surplus $2,000,000, and undivided profits $350,000, or a total of assets of $4,350,000. It was necessary, therefore, in order for the Third National Bank to be able to contribute its $5,250,000 of assets, contemplated by the agreement of consolidation, to add to those assets approximately $1,000,000. In order to produce this additional amount, the capital stock of the Third National Bank was increased $500,000 and the additional shares of stock were offered and sold to the then existing stockholders of that bank, on the basis of one share of new stock for every four shares held, at the price of $200 per share. There was added to the capital the sum of $500,000 and an equivalent amount to surplus. The certificate authorizing this increase in the capital stock of the Third National Bank was issued on June 28, 1919.

The capital and surplus of the Third National Bank having been increased in the manner above outlined, and the capital and surplus of the Mechanics-American National Bank of St. Louis having been increased in a like manner, thereafter, and in pursuance of the agreement of consolidation above set out, the name of the Third National Bank was changed to First National Bank in St. Louis and the business of the three banks continued under the charter of

the Third National Bank. Meetings of the stockholders of the three banks were held and the agreement of consolidation approved, which consolidation became effective as of July 5, 1919.

In carrying out the consolidation and in pursuance of the provisions of paragraph 4 of the agreement of consolidation, a committee of nine was appointed, which committee examined the assets proposed to be contributed by each of the three banks, and such of the assets of the three banks as were in excess of the amount of $5,250,000 to be contributed by each of them were, by each of such banks, delivered to the consolidated banks to be held, and they have since been held, as a special trust fund to be liquidated and distributed among the stockholders as of the ·date of consolidation. The committee selected assets of each bank of a value of $5,250,000 which were accepted under the agreement as the contribution of each bank, as provided in the contract. There was no bill of sale or any conveyance of any kind of the assets in the name of the three banks to the newly created First National Bank, the specific provisions of section 2 of an amendment to the National Bank Act, passed on November 7, 1918, 40 Stat. 1043, making such formal steps unnecessary.

The certificate of the Comptroller of the Currency approving the consolidation was issued on July 7, 1919, in terms as follows:

Whereas, By satisfactory evidence presented to the undersigned, it has been made to appear that the directors and shareholders of the Third National Bank of St. Louis, Missouri, The Mechanics-American National Bank of St. Louis, Missouri, and The St. Louis Union National Bank, St. Louis, Missouri, have complied with all the provisions of an Act of Congress approved November 7, 1918, entitled "An Act to provide for the consolidation of National Banking Associations;"

Now, therefore, I, Thomas P. Kane, Acting Comptroller of the Currency, do hereby certify that the Third National Bank of St. Louis, The Mechanics-American National Bank of St. Louis, and the St. Louis Union National Bank have been consolidated under the charter of the Third National Bank of St. Louis and under the corporate title of "First National Bank in St. Louis," with Capital Stock of Ten Million Dollars ($10,000,000), and that the said consolidation is approved.

In testimony whereof witness my hand and seal of office this seventh day of July, 1919.

(Signed)     T. P. KANE,
*Acting Comptroller of the Currency.*

Charter No. 170.   Consolidation No. 16.

After the above certificate of consolidation was issued, each former stockholder of the Third National Bank, and this is true also with respect to the stockholders of the other two consolidating banks, received one and one-third shares of stock of the First National Bank for each share formerly held; and in the same way, R. D. Musser, the taxpayer, received one and one-third shares for each share of stock of the Third National Bank formerly held by him.

The taxpayer made a return of net income, for income-tax purposes, for the year 1919, in which he reported no gain or loss resulting from the exchange of shares of stock of the Third National Bank for a greater number of shares of stock of the First National Bank, the latter shares having an aggregate par or face value in excess of the shares exchanged. Following an audit of this return, the Commissioner, under date of February 5, 1925, mailed a deficiency letter to the taxpayer showing a deficiency in income tax for the year 1919, in an amount heretofore set out, in which letter the Commissioner held that the taxpayer realized a taxable gain from the exchange of these securities, which he computed in the following manner:

| | |
|---|---:|
| 104 shares Third National Bank stock, acquired prior to Mar. 1, 1913, at $256 per share (Mar. 1, 1913, value) | $26,624.00 |
| 67 shares acquired in 1914 at $250 per share | 16,750.00 |
| Total | 43,374.00 |
| Received in exchange 228 shares First National Bank stock at $210 per share | 47,880.00 |
| Profit | 4,506.00 |

### DECISION.

The determination of the Comissioner is approved.

### OPINION.

SMITH: In his petition the taxpayer alleges that the Commissioner erred in his finding that the taxpayer realized a profit of $4,506 in the year 1919 from an alleged exchange of shares of stock in the Third National Bank of St. Louis for shares of stock in First National Bank in St. Louis. The method of determining the profit is set forth in the findings of fact. No evidence has been presented before this Board that the cost to the taxpayer or the March 1, 1913, value of the shares of stock of the Third National Bank of St. Louis was different from the amount found by the Commissioner or that the fair market value of the 228 shares of First National Bank in St. Louis was different from the amount found by the Commissioner. We are not, therefore, called upon to determine the amount of taxable gain, if any, which the taxpayer realized as a result of the exchange transaction. The sole question before us for decision is whether, under the facts as we have found them, the transaction was one which could give rise to a taxable gain under the provisions of the Revenue Act of 1918.

The taxpayer's appeal rests upon two principal points, which are as follows:

First. Capitalization of profits is not income. The new shares of the consolidated bank represent both capital and undivided profits,

and, there being no segregation of the earnings of the corporation, there can be no income to the shareholder.

Second. Transfer of bank shares by "operation of law" is not an "exchange" of securities. The certificates of new shares in the consolidated bank were issued by authority of the Act of Congress of November 7, 1918, to replace shares of the constituent banks, and in the case of this taxpayer represented only his interest before consolidation in the bank into which the consolidation was made, and under the charter of which the business has ever since been continued. There is no "sale or other disposition of property" as a result of the consolidation, and no "stock or securities exchanged" within the meaning of section 202 of the Revenue Act of 1918.

Taking up these points in their reverse order, let us look to the pertinent sections of the Revenue Act of 1918, to ascertain if they are well premised. Section 202 of the Revenue Act of 1918 provides as follows:

(a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

(2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203.

(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged.

When in the case of any such reorganization, merger, or consolidation the aggregate par or face value of the new stock or securities received is in excess of the aggregate par or face value of the stock or securities exchanged, a like amount in par or face value of the new stock or securities received shall be treated as taking the place of the stock or securities exchanged, and the amount of the excess in par or face value shall be treated as a gain to the extent that the fair market value of the new stock or securities is greater than the cost (or if acquired prior to March 1, 1913, the fair market value as of that date) of the stock or securities exchanged.

Did the carrying out of the agreement of consolidation, resulting in the uniting of these three banking corporations into one single entity, constitute either a "reorganization, merger, or consolidation" within the meaning of those terms as used in section 202 of the Revenue Act of 1918? We do not deem it necessary to enter into a discussion of the legal niceties of the respective meanings of the words "reorganization" or "merger" as used in the statute. It is

sufficient for the present to consider what Congress meant by the word "consolidation," for if the single entity created by the uniting of these three banking corporations constitutes a consolidation within the intendment of Congress, and we think that it does, then the First National Bank in St. Louis must be regarded as a new corporation, separate and distinct from the old corporations, and the exchange by this taxpayer of his shares of stock of the Third National Bank for shares of stock of the First National Bank in St. Louis constitutes an exchange of securities for securities within the purview of section 202 (b) of the Revenue Act of 1918, and the point must, therefore, be decided adversely to the taxpayer.

In Fletcher's Cyclopedia of the Law of Private Corporations, volume 7, section 4834, it is said:

The effect of the reorganization in any particular case must depend upon the intention of the parties and the terms of the statute under which it is effected.

As to the intendment of the parties at interest in consolidation of these banks we must look to the agreement of consolidation, constituting, as it does, the sole evidence in the case from which we can ascertain such intent. There we find unmistakable evidence of the intent of the parties to create and bring into being a new entity, separate and distinct from the old companies, and this notwithstanding that the new entity was to operate under the charter of one of the constituent banks. Lest there be any doubt on that score, we quote again below the pertinent provisions of the agreement of consolidation which we believe indicate conclusively the intent of the parties to create a new corporation:

2. The name of the consolidated association shall be "First National Bank in St. Louis."

3. The amount of capital stock of the *consolidated association* shall be Ten Million Dollars ($10,000,000.00) divided into one hundred thousand (100,000) shares of One Hundred Dollars ($100.00) each * * *. Of this capital stock thirty-three thousand and three hundred thirty-three and one-third (33,333⅓) shares shall be allotted to the then shareholders *of each of* said banks * * *.

\*       \*       \*       \*       \*       \*       \*

If the amount contributed *by any of the three banks* to provide for estimated federal taxes up to said date be not sufficient to pay said taxes when finally assessed and determined, any additional amount required for that purpose shall be paid *by the consolidated bank* * * *.

4. The assets contributed *by each of the banks* shall, upon the effective date of the consolidation, be passed upon and be acceptable to a committee of nine (9) * * *.

\*       \*       \*       \*       \*       \*       \*

6. In the event that the committee finds assets belonging to any of the three consolidating banks in excess of the said amount to be contributed by each of

them, then such excess assets, if any, shall be *by such bank* transferred and delivered to the *consolidated bank* * * *.

\* \* \* \* \* \* \*

8. The Board of Directors of *the consolidated bank* shall be not less than five (5) nor more than fifty-five (55) in number.

\* \* \* \* \* \* \*

9. The above mentioned Board of Directors shall meet at the office of the above-mentioned consolidated bank on July 7, 1919, at the hour of ten o'clock A. M., *for the purpose of electing officers of the consolidated bank, adopting by-laws* and transacting such other business as may come before said meeting. * * *

\* \* \* \* \* \* \*

10. On July 5, 1919, or on the date the consolidation takes effect, each of the stockholders *of the three banks* shall, on delivery of his certificates of stock *in the consolidating banks*, duly endorsed for cancellation, receive, on demand, * * * one and one-third (1⅓) shares of stock *in the consolidated bank* for each share of stock *formerly owned by him in the respective consolidating banks*. [Italics ours.]

Let us look now to the terms of the statute under which this consolidation was effected. We quote below in full the amendment to the National Banking Act, approved November 7, 1918, 40 Stat. 1043:

Sec. 1. * * * That any two or more national banking associations located within the same county, city, town, or village may, with the approval of the Comptroller of the Currency, consolidate into one association under the charter of either existing banks, on such terms and conditions as may be lawfully agreed upon by a majority of the board of directors of each association proposing to consolidate, and be ratified and confirmed by the affirmative vote of the shareholders of each such association owning at least two-thirds of its capital stock outstanding, at a meeting to be held on the call of the directors after publishing notice of the time, place, and object of the meeting for four consecutive weeks in some newspaper published in the place where the said association is located, and if no newspaper is published in the place, then in a paper published nearest thereto, and after sending such notice to each shareholder of record by registered mail at least ten days prior to said meeting: *Provided*, That the capital stock of such consolidated association shall not be less than that required under existing law for the organization of a national bank in the place in which it is located: *And provided further*, That when such consolidation shall have been effected and approved by the Comptroller any shareholder of either of the associations so consolidated who has not voted for such consolidation may give notice to the directors of the association in which he is interested within twenty days from the date of the certificate of approval of the Comptroller that he dissents from the plan of consolidation as adopted and approved, whereupon he shall be entitled to receive the value of the shares so held by him, to be ascertained by an appraisal made by a committee of three persons, one to be selected by the shareholder, one by the directors, and the third by the two so chosen; and in case the value so fixed shall not be satisfactory to the shareholder he may within five days after being notified of the appraisal appeal to the Comptroller of the Currency, who shall cause a reappraisal to be made, which shall be final and binding; and if said reappraisal shall exceed the value fixed by said committee, the bank shall pay the expenses of the reappraisal; otherwise the appellant shall pay said expenses, and the value so ascertained and determined shall be deemed to be a debt due and

be forthwith paid to said shareholder from said bank, and the share so paid shall be surrendered and after due notice sold at public auction within thirty days after the final appraisement provided for in this Act.

Sec. 2. That associations consolidating with another association under the provisions of this Act shall not be required to deposit lawful money for their outstanding circulation, but their assets and liabilities shall be reported by the association with which they have consolidated. And all the rights, franchises, and interests of the said national bank so consolidated in and to every species of property, personal and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national bank into which it is consolidated without any deed or other transfer, and the said consolidated national bank shall hold and enjoy the same and all rights of property, franchises and interests in the same manner and to the same extent as was held and enjoyed by the national bank so consolidated therewith.

The National Banking Act has been construed as authorizing the consolidation of national banks; and where consolidation is effected by one bank taking over all the assets and assuming all the liabilities of the other, the former becomes a new corporation, whose stockholders are the stockholders of each of the old corporations before consolidation. 7 Corpus Juris, 851. The legal effect of a consolidation is to extinguish the constituent companies and create a new corporation with appropriate liabilities and stockholders derived from those then passing out of existence. *Adams* v. *Yazoo & Mississippi Valley R. R. Co.*, 24 So. 200, 211; 77 Miss. 194; 60 L. R. A. 33.

In the case of *Bonnet* v. *First National Bank of Eagle Pass*, 60 S. W. 325, the Court of Civil Appeals of Texas had before it for consideration several propositions asserted by the appellant in that case under various assignments, among which was that the consolidation of the First National Bank was *ultra vires* and void. Of especial interest in the case of this taxpayer is the discussion contained in the court's opinion as to the legal effect of the consolidation. The court stated as follows:

As a general principle, corporations cannot consolidate unless the authority is conferred by legislation. Such authority may be given in the act by virtue of which the corporation was organized, whether it be a special act of incorporation or a general act under which all corporations of the same kind are chartered. The banks the consolidation of which we are considering were, of course, organized and received their charters under authority of the national bank act. Section 5223, Rev. St. U. S. (a part of that act), clearly recognizes the right of a bank incorporated thereunder to wind up its business and consolidate with another such association, and may be regarded as legislative authority for the consolidation of the banks in question, provided it was otherwise legally effected. The right thus given to national banks to consolidate cannot be regarded as an amendment to their charters, but is rather to be considered as read into and forming a part of the charter of every national bank. It is, of course, well understood that a material and fundamental change by an amendment of the charter of a corporation is a violation of the contract rights of any stockholder who does not assent to such an amendment, and an amendment of a charter consolidating the corporation with another corporation is such a material and fundamental change. Cook, Corp. (4th Ed.) §500. If

is seen from the facts of this case that the consolidation of these banks was effected under the direction and by the sanction of the comptroller of the currency. And this appears independent of his letters, the introduction of which in evidence is complained of by the appellant. It will be presumed, therefore, that the consolidation was legally effected. It is generally held that the effect of a consolidation is the dissolution of the corporations previously existing, and at the same instant the creation of a new corporation, with property, liabilities, and stockholders derived from those passing out of existence. It is, in effect, the surrender of the old charter of the companies, the acceptance thereof by the legislature, and the formation of a new company out of such portions of the old as entered into the new. Cook, Corp. (4th Ed.) §897; *Adams* v. *Railroad Co.* (Miss.) 24 South. 201. And it has been held that a consolidation, and not a mere sale and purchase, is effected where all the property and franchises of one corporation are transferred to another, and where the stockholders of the former corporation transfer all their shares therein to the latter company, under an arrangement by which the shares of the latter company are issued to them in exchange. *Railway Co.* v. *Ashling*, 160 Ill. 373, 43 N. E. 373. Therefore it may be considered that, the instant the consolidation of these two corporations was effected, the First National Bank of Eagle Pass, though its name remained unchanged, became, in effect, a new corporation, having as its stockholders not only its former ones, but those of the Simpson National Bank, which had been amalgamated with it, with the franchises, property, and liabilities held and incurred by each before the act of consolidation.

In view of all of the foregoing, we hold that the First National Bank in St. Louis is an entirely new entity arising out of the consolidation of the Third National Bank of St. Louis, the Mechanics-American National Bank of St. Louis, and the St. Louis Union National Bank; that the properties of the three consolidating banks were transferred to the consolidated bank in exchange for securities of the latter which were distributed directly to the stockholders of the three consolidating banks by the consolidated bank, the transaction constituting an exchange of property for property; and that the exchange by this taxpayer of shares of stock of the Third National Bank for shares of stock of the First National Bank in St. Louis constituted an exchange of securities for securities within the purview of section 202(b) of the Revenue Act of 1918.

Turning now to the taxpayer's first contention, we find that to be predicated upon taxpayer's assumptions that the effect of the consolidation of the businesses of the several banks involved was not to sever any part of the profits of the enterprise; that, looked at as a whole, the purpose and effect of the consolidation was to continue the business without a distribution to the stockholders of any part of the property, surplus, or otherwise; that the taxpayer realized no gain because after the consolidation took place he had nothing he did not have before; that he merely exchanged one set of certificates for another; and that his new stock was but different evidence of his ownership of the same assets or enterprise.

We do not think, however, that this contention is well founded. The taxpayer turned in shares of stock of the Third National Bank

of St. Louis for a larger number of shares of stock in First National Bank in St. Louis.  If the market value of the total number of shares received in exchange was in excess of the cost or March 1, 1913, value of the shares of stock of the Third National Bank of St. Louis turned in by the taxpayer, the amount of that profit constitutes taxable income within the plain terms of the Revenue Act of 1918.  The only question is: Did Congress exceed its authority in calling this amount gain or income?  The taxpayer, relying upon the decisions of the Supreme Court in *Weiss* v. *Stearn*, 265 U. S. 242; *United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176; and *Cullinan* v. *Walker*, 262 U. S. 134, contends that no profit liable to income tax was realized from the transaction.  The principle upon which the above-named cases were decided, as well as *Eisner* v. *Macomber*, 252 U. S. 189; *Weiss* v. *Stearn*, 265 U. S. 242; is explained in the case of *Marr* v. *United States*, 268 U. S. 536, as follows:

In each of the five cases named, as in the case at bar, the business enterprise actually conducted remained exactly the same.  In *United States* v. *Phellis*, in *Rockefeller* v. *United States* and in *Cullinan* v. *Walker*, where the additional value in new securities distributed was held to be taxable as income, there had been changes of corporate identity.  That is, the corporate property, or a part thereof, was no longer held and operated by the same corporation; and, after the distribution, the stockholders no longer owned merely the same proportional interest of the same character in the same corporation.  In *Eisner* v. *Macomber* and in *Weiss* v. *Stearn*, where the additional value in new securities was held not to be taxable, the identity was deemed to have been preserved.  In *Eisner* v. *Macomber* the identity was literally maintained.  There was no new corporate entity.  The same interest in the same corporation was represented after the distribution by more shares of precisely the same character.  It was as if the par value of the stock had been reduced, and three shares of reduced par value stock had been issued in place of every two old shares.  That is, there was an exchange of certificates but not of interests.  In *Weiss* v. *Stearn* a new corporation had, in fact, been organized to take over the assets and business of the old.  Technically there was a new entity; but the corporate identity was deemed to have been substantially maintained because the new corporation was organized under the laws of the same State, with presumably the same powers as the old.  There was also no change in the character of securities issued.  By reason of these facts, the proportional interest of the stockholder after the distribution of the new securities was deemed to be exactly the same as if the par value of the stock in the old corporation had been reduced, and five shares of reduced par value stock had been issued in place of every two shares of the old stock.  Thus, in *Weiss* v. *Stearn*, as in *Eisner* v. *Macomber*, the transaction was considered, in essence, an exchange of certificates representing the same interest, not an exchange of interests.

As in the case of *Marr* v. *United States*, *supra*, we do not think that the corporation known as First National Bank in St. Louis is the same corporation as the Third National Bank of St. Louis. To be sure the new corporation was organized under the laws of

the United States, but its assets were entirely different. The identity of the Third National Bank of St. Louis was lost in the consolidated corporation. The assets of the new corporation were entirely different from the assets of the old corporation, and there was a material change in the character of the securities issued. The profit realized by the taxpayer upon the exchange of securities must be held to be liable to income tax.

TRUSSELL and PHILLIPS dissenting.