THE GRANGE NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49981. Promulgated April 15, 1931.

*Joseph Getz, Esq.,* for the petitioner.
*M. J. O'Connor, Esq.,* for the respondent.

OPINION.

MURDOCK: On July 7, 1930, the Commissioner sent a deficiency notice to " The Grange National Bank, Patton, Pennsylvania," stating that a deficiency in income taxes in the amount of $1,347.55 had been assessed against it for the period from January 1 to August 31, 1928. On August 30, 1930, a petition was filed with the Board under the caption, " The Grange National Bank, Petitioner," alleging that the petitioner was a corporation duly organized under the laws of Pennsylvania on August 8, 1906, to conduct the business of a national bank under the National Banking Act; it conducted a general banking business until August 31, 1928, when it was merged with the First National Bank of Patton, Pa., and surrendered its charter and discontinued business; the stockholders of the Grange National Bank turned in their stock, receiving therefor an equal number of

shares of stock of the First National Bank; and, concurrently with the cancellation of the stock, the First National Bank took over the assets of the Grange National Bank. The petition was verified by F. L. Brown, who stated that he was the cashier of the Grange National Bank and duly authorized to verify the petition.

The respondent moved to dismiss the proceedings for lack of jurisdiction. A motion to amend the petition was filed, verified by F. L. Brown, by which it was proposed to strike out certain paragraphs of the original petition and substitute therefor allegations that the petitioner was chartered as a national bank under the National Banking Act on August 8, 1906, with its principal office at Patton, Cambria County, Pennsylvania; on August 31, 1928, it was merged with the First National Bank of Patten, Pennsylvania, in accordance with the provision for merger or consolidation of national banks under the National Banking Act; and its assets were transferred to and its liabilities assumed by the First National Bank of Patton. The parties were heard on these motions and briefs were filed:

The respondent contends that by reason of the merger or consolidation the constituent corporations passed out of existence, and therefore the "Grange National Bank" could not file a petition. It is contended on behalf of the petitioner that its corporate identity continues for the purpose of suing or being sued until its affairs are completely settled.

The National Banking Act provides that any two or more national banking associations located within the same county, city, town, or village may, with the approval of the Comptroller of the Currency, consolidate into one association under the charter of either existing bank. It further provides that all the rights, franchises, and interests of the national bank so consolidating in and to every species of property, personal and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national bank into which it is consolidated without any deed or other transfer, and the consolidated national bank shall hold and enjoy the same and all rights of property, franchises, and interests in the same manner and to the same extent as was held and enjoyed by the national bank so consolidated therewith. See Title 12, U. S. Code Annotated, pars. 33 and 34.

The following is a quotation from *Bonnet* v. *First National Bank of Eagle Pass*, 24 Tex. Civ. App. 613; 60 S. W. 325:

It is generally held that the effect of a consolidation is the dissolution of the corporations previously existing, and at the same instant the creation of a new corporation, with properties, liabilities, and stockholders derived from those passing out of existence. It is, in effect, the surrender of the old charter of the companies, the acceptance thereof by the legislature, and the

formation of a new company out of such portions of the old as entered into the new. Cook Corp., (4th Ed.) para. 897; *Adams* v. *Railroad Co.*, (Miss.) 24 South 201. * * * Therefore it may be considered that, the instant the consolidation of these two corporations was effected, the First National Bank of Eagle Pass, though its name remained unchanged, became, in effect, a new corporation, having as its stockholders not only its former ones, but those of the Simpson National Bank, which had been amalgamated with it, with the franchises, property, and liabilities held and incurred by each before the act of consolidation.

In *Buist's Estate*, 297 Pa. 537; 147 Atl. 606, a case involving the consolidation of national banks, the Court said:

The merger of two or more corporations is neither a sale nor a liquidation of corporate property, but a consolidation of properties, powers, and facilities of the constituent companies, forming a new corporate entity. Merger is a method of incorporation by two or more companies into a single corporate body. While the constituent companies are deemed dissolved, their powers and privileges, to the extent authorized by the merger contract or the law, are vested in the merged company as a new corporation. This entity is distinct from that of its constituents, but it draws its life from the act of consolidation.

*First National Bank of Tulsa* v. *Hoover* (Tex. Civ. App., 1925), 269 S. W. 262 is to the same effect. In *R. D. Musser*, 2 B. T. A. 1031, we held that a taxpayer realized taxable gain through an exchange of shares of stock in a consolidating national bank for a larger number of shares in the consolidated national bank.

In *National Bank* v. *Insurance Co.*, 104 U. S. 54, relied upon by the petitioner, the transaction between the two national banks did not take place under the section of the National Banking Act authorizing consolidation. See also *Central National Bank*, 11 B. T. A. 1017. In each of those cases there was a voluntary liquidation of a national bank. Under the sections of the National Banking Act providing for such liquidation, a liquidating agent may be appointed to settle the affairs of the liquidating bank. See *Green* v. *Bennett* (Tex. Civ. App., 1908), 110 S. W. 108. In such cases the bank continues to exist during the process of liquidation as a person in law capable of suing and being sued for the purpose of winding up its business until its affairs are completely settled. See cases cited in note 13, par. 181, Title 12, U. S. Code Annotated.

In the instant case the transaction between the petitioner and the First National Bank of Patton is alleged to have taken place in accordance with the provision for merger or consolidation under the National Banking Act. The courts have held that under such provision the constituent banks lose their corporate identity as soon as the merger or consolidation is effected, and a new corporate body, separate and distinct from those formerly in being, comes into existence. After the consolidation the Grange National Bank, not being in existence, could not file a valid petition. This proceeding

is a nullity and an order of dismissal for lack of jurisdiction will be entered. *Sanborn Brothers, Successors*, 14 B. T. A. 1059; *S. Hirsch Distilling Co.*, 14 B. T. A. 1073; *Consolidated Textile Corporation*, 16 B. T. A. 178.