PITTSBURGH TERMINAL COAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19005. Promulgated May 14, 1931.

*C. F. Taplin, Esq.*, and *Leo H. Hoffman, Esq.*, for the petitioner.
*W. L. Hart, Esq.*, and *J. E. Mather, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner on June 3, 1926, mailed a deficiency notice under section 274 of the Revenue Act of 1926 to " Pittsburgh Terminal Coal Corporation, Successors to the Meadow Lands Coal Company, Wabash Building, Pittsburgh, Pennsylvania," stating, "An audit of your income and profits tax returns for the years 1917 to 1919, inclusive, has resulted in the determination of a deficiency in tax of $89,583.33 as shown in the attached statement." The statement shows the following deficiencies:

| | |
|---|---|
| 1917 | $61,267.13 |
| 1918 | 15,384.39 |
| 1919 | 12,931.81 |
| Total | 89,583.33 |

The petition was filed by the Pittsburgh Terminal Coal Corporation, and in the petition it stated that the " Pittsburgh Terminal Coal Corporation, as the successor of Meadow Lands Coal Company " petitions for a redetermination of the deficiencies.

The petitioner has now moved for a judgment of no deficiency on the ground that the deficiencies are for years prior to the year in which the petitioner first came into being.

On November 26, 1924, the directors of the Pittsburgh Terminal Coal Company and the directors of the Meadow Lands Coal Company filed in the office of the Secretary of the Commonwealth of Pennsylvania a joint agreement, under the corporate seal of each corporation, for the merger and consolidation of these corporations, duly approved by the stockholders of each corporation and in accordance with an act of the General Assembly of the Commonwealth of Pennsylvania entitled "An Act authorizing the merger and consolidation of certain corporations," approved May 3, 1909. Thereafter, on December 1, 1924, the Governor of the Commonwealth of Pennsylvania, in accordance with the aforesaid Act of the General Assembly, issued letters patent to the consolidated corporation under the name of "Pittsburgh Terminal Coal Corporation." These letters patent declared the consolidated corporation to be and erected it into a body corporate entitled to all the privileges, immunities, franchises and powers conferred by the above mentioned act or which may have theretofore been conferred upon the two consolidating corporations.

From the Pennsylvania statutes here in question and from the decisions of the courts of Pennsylvania, it is apparent that a new corporation is formed, the old corporations, for some purposes at least, are dissolved, and all suits brought after the date of the so-called merger and consolidation must be brought against or in the name of the new corporation. See *Pittsburgh & West Virginia Railway Co. et al.*, 22 B. T. A. 876, where this same consolidation was before us. *Dalmas* v. *Philipsburg & Susquehanna Valley Railroad Co.*, 254 Pa. 9; 98 Atl. 796; *Punxsatawny Borough* v. *Phillips Gas & Oil Co.*, 238 Pa. 23; 85 Atl. 1003; *Petry* v. *Harwood Electric Co.*, 280 Pa. 142; 124 Atl. 302. If, after December 1, 1924, the Commissioner were to sue for the recovery of these taxes, it would be proper to name the Pittsburgh Terminal Coal Corporation as defendant in such suit, and if he were to sue and name the Meadow Lands Coal Company as defendant and not the Pittsburgh Terminal Coal Corporation, his suit could be dismissed under the decisions of the Pennsylvania courts for failure to name the proper party defendant. *Dalmas* v. *Philipsburg & Susquehanna Valley Railroad Co.*, *supra.* But the question of our jurisdiction and procedure is a different one.

We have held in a number of cases, but in each case depending upon the facts in that case, that we do not have jurisdiction over a proceeding instituted by a petition filed by a corporation other than the one as to which the deficiency has been determined and

asserted by the mailing of a deficiency notice to that corporation. *Bisso Ferry Co.*, 8 B. T. A. 1104; *Bond, Inc.*, 12 B. T. A. 339; *American Arch Co.*, 13 B. T. A. 552; *San Joaquin Fruit & Investment Co.*, 16 B. T. A. 1290; *Carnation Milk Products Co.*, 20 B. T. A. 627. However, the facts in the present case present a somewhat different situation. Here it is clear from the deficiency notice and from the pleadings in the case that the liability for the taxes in controversy arose from the operations of the Meadow Lands Coal Company during the years 1917, 1918, and 1919. The deficiency notice was not addressed to the Meadow Lands Coal Company but was addressed to the " Pittsburgh Terminal Coal Corporation, Successors to the Meadow Lands Coal Company," and the petition in this case was filed by and is the petition of Pittsburgh Terminal Coal Corporation as the successor of Meadow Lands Coal Company. The petitioner contends that the Board has jurisdiction to consider and decide whether the petitioner is liable as a taxpayer for deficiencies in taxes for the years 1917 to 1919, but, since the petitioner was not in existence during the taxable years here in question, and since the proceeding is under section 274 of the Revenue Act of 1926 and is not a transferee proceeding under section 280 of that act, it is apparent that no deficiencies could exist against it as a taxpayer for the years 1917 to 1919.

The petitioner's assumption that this is not a transferee proceeding under authority of section 280 of the Revenue Act of 1926 is entirely justified. Where the Commissioner determines to assess a liability against a person or a corporation as transferee of the assets of a taxpayer for unpaid taxes due from that taxpayer, it is his custom to notify the alleged transferee that he is proceeding as provided in section 280 of the Revenue Act of 1926. He thus eliminates any uncertainty as to the nature of the proceeding. The deficiency notice in this case not only does not purport to be a notice of the determination of transferee liability, but it obviously purports to be and is a notice that the Commissioner has determined deficiencies in the taxes imposed directly upon a taxpayer. It states:

An audit of *your* income and profits tax returns * * * has resulted in the determination of a *deficiency* in tax * * *. [Italics supplied.]

At the hearing the presiding Member said to the counsel for the respondent:

I notice the deficiency notice attached to the petition * * * does not purport to be a transferee notice.

Counsel for the respondent replied, " No, sir."

The Member then said:

What is your position, that the notice under 274 should be interpreted as a notice under 280?

Counsel for the respondent replied, " No."

Counsel for the respondent later in the hearing said:

The respondent may take this position; not only is this the proper proceeding in this case, but he also has the right to come in and affirmatively allege transferee liability so he may have two causes of action.

However, the respondent never has taken that position and he has never claimed the right to come in and affirmatively allege transferee liability in this case. He has not made any such contention in his brief. Under all of these circumstances we see no reason to treat this proceeding as if it were a transferee proceeding.

The Board was established by section 900 of the Revenue Act of 1924 and its existence has been continued in later acts. The question of what it may consider and decide in any proceeding depends in the first place upon the intention of Congress as expressed in these acts. Section 274 of the Revenue Act of 1924 provided that if, in the case of any *taxpayer*, the Commissioner determined that there was a deficiency in tax, he should notify *the taxpayer* of such deficiency and within a prescribed time *the taxpayer* might file an appeal with the Board of Tax Appeals. A similar provision is contained in section 274 (a) of the Revenue Act of 1926.

At the time of the passage of the Revenue Act of 1926, the Commissioner had no authority to send a deficiency notice to one corporation successor to another in respect of taxes imposed upon the latter in previous years where the two corporations were different corporations and the corporate entity of the old was not continued in the new. The deficiency notice in this case was mailed on June 3, 1926, to the one which here petitions. This was after the approval of the Revenue Act of 1926 containing section 280. Under section 280 the Commissioner was authorized, *inter alia*, to notify a *transferee* that he was liable in respect of the tax imposed upon a certain *taxpayer*. Any transferee who received such a notice was permitted to file a petition with this Board just as if he had received a notice under section 274. Congress must have had in mind a distinction between the word " taxpayer " which it used throughout this act, particularly in sections 274 and 280, and the word " transferee " as used throughout the act, particularly in section 280. The Revenue Act of 1928 in section 602 provided for the amendment of Title IX of the Revenue Act of 1924, as amended to include two new sections, one of which was as follows:

TRANSFERED PROCEEDINGS

SEC. 912. In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

Apparently, Congress did not intend that the tax liability of a taxpayer corporation should be litigated before this Board by another separate corporation though successor to the taxpayer and liable for its tax or that transferee liability should be contested before the Board except where the Commissioner has determined to act and has acted under section 280. The deficiency notice in this case was a notice of a determination of a deficiency under section 274 and not of transferee liability under section 280. When we come to examine the taxes which the Commissioner here asserts, it is obvious that they are not taxes of this taxpayer and were not imposed upon it as a taxpayer by any revenue act. Another corporation, the Meadow Lands Coal Company, was the taxpayer upon which these taxes were imposed by the revenue acts. If the Commissioner proposes to assess those taxes against the Pittsburgh Terminal Coal Corporation, he should proceed under section 280 of the Revenue Act of 1926. *National Bank of Commerce et al.*, 19 B. T. A. 1080. Apparently he now recognizes this fact, for he has sent notices to the Pittsburgh Terminal Coal Corporation under section 280, proposing to assess certain amounts against it representing taxes imposed upon the Meadow Lands Coal Company for years subsequent to the year 1919 because of its liability as a transferee of the property of the Meadow Lands Coal Company.

We have no reason in this case to consider the question of the liability of the petitioner at law or in equity in respect of taxes imposed upon the Meadow Lands Coal Company. We are here limited to decision of the question of whether or not the petitioner is liable as a taxpayer for any deficiency in taxes imposed upon it and of which it has been notified in accordance with section 274. But for the years involved there is no deficiency in such taxes so far as the record in this case discloses.

Reviewed by the Board.

*Judgment of no deficiency will be entered.*

---

BLACK, dissenting: I do not agree to the conclusion reached in the majority opinion in this proceeding that the Pittsburgh Terminal Coal Corporation was not the proper party to which deficiency notice should be sent for taxes due by the Meadow Lands Coal Company for the years 1917, 1918, and 1919. It is my view that petitioner was not only a proper party to which deficiency notice should

have been sent, but it was the only proper party. If deficiency notice for the taxes due in these years had been mailed by respondent to the Meadow Lands Coal Company, any appeal based on such deficiency notice would have been dismissed for lack of jurisdiction, because no corporation by that name was any longer in existence. It had lost its identity in the new corporation—Pittsburgh Terminal Coal Corporation. *Grange National Bank*, 22 B. T. A. 1209.

The majority opinion points out that the respondent should have proceeded against the petitioner corporation under section 280 of the Revenue Act of 1926. I agree that petitioner is liable as a transferee and that the Commissioner could have properly proceeded under section 280 of the Revenue Act of 1926. But petitioner is more than a transferee. Under the statutes of Pennsylvania, it is the successor corporation of the two merged corporations, Pittsburgh Terminal Coal Company and the Meadow Lands Coal Company.

Chapter 13, Title 15, section 423, Purdon's Pennsylvania Statutes Annotated, reads:

Upon the filing of said certificates and agreement, or copy of the agreement, in the office of the Secretary of the Commonwealth, and upon the issuing of new letters thereon by the Governor, the said merger shall be deemed to have taken place, and the said corporations to be one corporation under the name adopted in and by said agreement possessing all the rights, privileges, and franchises theretofore vested in each of them; and all the estate and property real and personal, and rights of action, of each of said corporations, shall be deemed and taken to be transferred to and vested in the said new corporation, without any further act or deed: Provided, That all rights of creditors and all liens upon the property of each of said corporations shall continue unimpaired, limited in lien to the property affected by such liens at the time of the creation of the same, and the respective constituent corporations may be deemed to be in existence to preserve the same; and all debts not of record, duties, and liabilities of each of said constituent corporations shall thenceforth attach to the said new corporation, and may be enforced against it to the same extent and by the same process as if said debts, duties, and liabilities had been contracted by it.

In *Pittsburgh Terminal Coal Corporation* (the same corporation as petitioner herein) v. *Robert Potts, Appellant*, 92 Pa. Superior Court Reports, p. 1, in discussing the effect of the merger of the Pittsburgh Terminal Coal Company and Meadow Lands Coal Company into the Pittsburgh Terminal Coal Corporation, the court said:

We agree with the court below that the present appellee is not in the position of an ordinary assignee of a lease as, for instance, was the plaintiff in the case of *Curry* v. *Bacharach Quality Shops, Inc., supra.* Even if it can be said in any proper sense of the word that the rights of action and property of the constituent corporations are assigned to the consolidated company resulting from the merger, such an assignment would be by operation of law. A more accurate description of the transfer would be to say that the consolidated corporation succeeds to the rights of action and property of the constituent

companies. The language of the act is that "all the estate and property, real and personal, and rights of action of each of said corporations, shall be deemed and taken to be transferred to and vested in the said new corporation, without any further act or deed." This distinction between assignment and succession was recognized in *Mansfield, O. & L. M. R. R. Co.* v. *Drinker*, 30 Mich. 124, 127. The consolidated corporation in that case was attempting to recover assessments upon subscriptions to the capital stock of one of the merged corporations. It had not complied with all the provisions of the merger act. The court held that the plaintiff must show that it had succeeded to the rights of the merged corporation by fully complying with the statute, or that it had acquired those rights by assignment. Under the circumstances of this case we think the present appellee is to be regarded as the legal successor of the original lessor and is entitled to enforce against appellant the provisions of the lease here involved. We are unanimously of opinion that the court below committed no error in discharging the rule.

So it seems to me that by operation of law under the Pennsylvania statutes, as construed by the courts of that State, the petitioner in this proceeding stepped into the shoes of the merged corporations and their tax liabilities became just as much its own liabilities as they were the liabilities of the two merged corporations. Therefore I think the respondent properly mailed petitioner a deficiency notice as the taxpayer under section 283 (a) Revenue Act of 1926, and that petitioner is liable for whatever taxes the Meadow Lands Coal Company owed for 1917, 1918, and 1919. The majority opinion is in my judgment wrong in holding otherwise.

SMITH agrees with this dissent.

———

MATTHEWS, dissenting: As I read the pleadings in this case, the real question raised by petitioner's motion for judgment of no deficiency on the ground that the deficiencies are for years prior to the year in which the petitioner first came into being, is whether the notice and petition relate to deficiencies in taxes due from the Pittsburgh Terminal Coal Corporation, as the taxpayer, or relate to deficiencies in taxes of the Meadow Lands Coal Company asserted against the Pittsburgh Terminal Coal Corporation, as transferee.

The Pittsburgh Terminal Coal Corporation is the successor of the Meadow Lands Coal Company, received the property of the latter company, and, under the Pennsylvania statute authorizing the merger and consolidation of certain corporations, became liable for all debts of the predecessor corporation. The Pittsburgh Terminal Coal Corporation is, therefore, liable at law for the debts of the predecessor corporation and is a transferee of property of the Meadow Lands Coal Company within the meaning of the Revenue Act of 1926.

Under the provisions of section 280, the Commissioner was required to assert the liability for taxes due from the Meadow Lands Coal Company against the Pittsburgh Terminal Coal Corporation:

SEC. 280. (a) The amounts of the following liabilities *shall* * * * *be* *assessed*, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title * * *:

(1) The liability, at law * * * of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

The notice of deficiency mailed to the Pittsburgh Terminal Coal Corporation fully advised it in what capacity the Commissioner proposed to assert against it the deficiencies in taxes for the years 1917, 1918, and 1919 of the Meadow Lands Coal Company, and that was as successor of the Meadow Lands Coal Company. The petition filed shows that the Pittsburgh Terminal Coal Corporation fully understood the notice to be of its liability for taxes due from its predecessor because it petitioned in its capacity as successor of the Meadow Lands Coal Company and alleged in paragraph 1 that it succeeded to all the rights and liabilities of the Meadow Lands Coal Company. In paragraph 4, petitioner alleged that the Commissioner committed certain errors going to the merits of the tax liability of the Meadow Lands Coal Company and in paragraph 5 stated the facts relied upon as sustaining the allegations of error. In his answer, respondent admitted the allegations in paragraph 1. The effect of the pleadings was that petitioner admitted that it was a transferee of property of the taxpayer and thus left the Commissioner only the burden of proving the amount of property received by the transferee.

It was not necessary for the Commissioner to call the Pittsburgh Terminal Coal Corporation a transferee, or to refer to section 280, in order to constitute the notice a notice of transferee liability. As transferee, the Pittsburgh Terminal Coal Corporation had the right to appeal to the Board. It did appeal in that capacity. The motion for judgment of no deficiency, on the ground that petitioner was not in existence in the years involved, appears to have been an afterthought. Whether or not the Commissioner intended the notice to be a notice of transferee liability, it is in form a notice of the transferee liability of the Pittsburgh Terminal Coal Corporation for taxes due from the Meadow Lands Coal Company, and the Pittsburgh Terminal Coal Corporation, having appealed as transferee, should not now be heard to deny that it filed its petition as such.

One of the provisions with respect to deficiencies in income tax imposed by the Revenue Act of 1926 is that in section 274 (a) which authorizes the Commissioner to send a notice of deficiency to the taxpayer and which gives the taxpayer 60 days in which to file a

256

petition with the Board of Tax Appeals. The authority to assert the taxpayer's liability for taxes against the transferee of property of the taxpayer is derived from section 280, but the notice to the transferee and the right of the transferee to appeal are derived from section 274 (a).

That the notice of the liability proposed to be asserted against a transferee is made under the authority of section 274 (a) seems clear from the language used in section 280 (d):

The running of the period of limitation upon the assessment of the liability of a transferee or fiduciary 'shall, after the mailing of *the notice under subdivision (a) of section 274 to the transferee or fiduciary*, be suspended for the period during which the Commissioner is prohibited from making the assessment in respect of the liability of the transferee or fiduciary, and for 60 days thereafter.

In terms, section 274 (a) refers only to notices of deficiencies in income tax imposed by the Revenue Act of 1926, asserted against the taxpayer, but by virtue of the provisions of section 283, notices of deficiencies in taxes under prior acts are to be considered notices under section 274 (a), and by virtue of section 280, notices of transferee liability are also notices under section 274 (a).

All notices of deficiencies or liabilities for income tax, therefore, are made under the authority of section 274 (a) as enlarged by sections 280 and 283. It is only from such a notice that an appeal lies to the Board of Tax Appeals. The effect of section 280 is merely to authorize the Commissioner to proceed against the transferee in the same manner as he is authorized to proceed against the taxpayer, and to give the transferee the same rights with respect to the tax as the taxpayer had. If the notice purports to assert the liability at law of a transferee of property of a taxpayer, and an appeal is made by such person, as transferee, all of the requirements of the Act have been met.

TRUSSELL and ARUNDELL agree with this dissent.